Thank you. Good morning. Charles Fleischman appearing for the appellate. This is an ERISA case where my client was denied her disability pension, was terminated. In doing so, I think the defendants forgot that they are fiduciaries. ERISA fiduciary owing duties to my client of received. They just, they played close-lipped on everything. They objected to the production of documents on attorney-client privilege when all the documents should have been turned over to the plaintiff long before litigation, prior to the final decision on the administrative appeal. I think I laid it pretty much out in my brief and on my briefs. If there are any questions, I'd be glad to answer. Counsel, go ahead. I'll defer. The board-certified orthopedic surgeon and the board-certified neurologist that reviewed Ms. Hoffman's medical records in 2015, reviewed records dating back to 2002. Wouldn't this include, or I'm asking, does this include the records of Hoffman's treating physicians who found her to be disabled? So if that's the case, you know, was it an abuse of discretion not to consider the earlier treating physician records directly? I'm not sure which records you're talking about. The records I'm talking about that weren't produced were, they had, they hired MLS to do it. When the medical records review, and I never saw those records, I never even knew that they hired them until they supplemented their administrative record just before the final briefs were due and the motion for trial on the administrative record. Yeah, but I thought you were arguing that they never, or they didn't take into account the treating physicians. And I'm just included in that, in those records that they, that they had. Well, they had all the records from a first case, okay? They said in answer to interrogatories that they did not review those records in the second case. And whether that's proper, that's not proper. They have to review all the records that's made available to them by the plaintiff, that those are in the regulations. I thought your complaint was that they hadn't given you the records, not that they hadn't reviewed the records. Which is it? It's both. Ah, all right. Okay? They hadn't reviewed the records. They answered an interrogatory saying if you wanted us to review those records, records that we already had, that they already had, you should have asked us to. Counsel, are those interrogatories and the answers given by the plans, are they part of the record before this court? Yes. All right. Judge, if you had a follow-up, I'll defer. No, go ahead. All right. Counsel, I wanted to ask you a little different question. One thing that I struggled with in preparing for this hearing was the issue that the district judge had a trial scheduled, I believe, on October 18th, but a motion for summary judgment filed by the defendant on October 17, the day before. And he, initially, his ruling looked like an order granting the motion for summary judgment. But this is a trial on the administrative record. So had he proceeded to have that trial the next day, how would that trial have differed from his review of the materials submitted on the motion for summary judgment? What would have happened at the trial that didn't happen in the motion review? To be honest with you, I can't tell you what would have happened. Okay? But I can tell you... Not what the result would have been. He considered my opening trial briefs and my reply trial briefs. He didn't even consider them. Were they somehow different than the arguments you made in response to the motion? Yes. In opposition to the motion, I began the opposition to the motion saying, we have a trial schedule. I've already filed the trial briefs. I don't want to burden the court... Words to the effect, I don't want to burden the court with more rehashing the same old arguments I made in tomorrow or the hearing on the trial. And I just supplemented that with a few other things. I mean, my main briefs were the trial brief and the reply trial brief. But I want to clarify... Or the opposition trial brief. I want to clarify, counsel, if that trial had proceeded the following day, this would not have been a trial the way I usually think of a trial with witnesses and evidence and direct testimony and cross-examination and that sort of thing. This would be a trial based on the record with perhaps some argument from counsel. Is that correct? Yes. All right. So what are you asking this court to do? Are we to... Are you asking us to reverse the trial court because there were unresolved issues of material fact? Or are you asking... Because it's not clear to me. Are you asking this court to reverse the district court because it reached the wrong legal conclusions based on stipulated facts? Okay. I'm asking this court to make a finding that my client was denied a full and fair review as required by the ERISA statute and the ERISA regulations. And he was denied that because... She was denied that because she was never given all the records before the administrative decision was made final. And she was... In fact, a lot of those records were never even given to her during the litigation. And we didn't... And we discovered the existence of other records just through happenstance because they gave us a letter way into litigation after the briefs were filed saying that they'd asked MLS for a prior review. So we were never given those records. She was denied a full and fair review. They didn't even show the trustees her declaration regarding her work during the years in question, where she said she worked a total of 10 hours in 13 years on fan films and student films. Let's talk about the decision, the plans made. There is no original report because I asked for the original reports. After all, how did they communicate their beliefs or their findings to Dr. Constantine? They must have written something or did they dictate them? We have nothing. Counsel, I understand your objection that you're... Let me just ask my question. Go ahead. I'm sorry. Your objection that you and your client didn't have access to the records that the plans apparently relied on. I understand that objection and I'm not discounting it. However, what's really concerning to me is did the plan have the records when they made the decision they made? And that's what is not clear to me. I don't know either. I know that their lawyers had the plan, had all the records. How do you know that? Because I gave it to them. I'm not real sure what records you're talking about that they might not have had. I think they had all of them. Well, it's not clear to me and perhaps I missed it in the review of the record, but I'm looking at a record evidence ER 219, which is the decision of the plan or a plan that was made summary of the decision of the plan. This letter is dated March 22 and it's a letter to your client or to you and it says, I'll summarize just for time, that we've made our decision against your client. We asked for records of Dr. Solberg, Swan, Usler and a few other doctors and only one doctor responded, so we don't have the records, which is concerning because they granted the disability in 2004 based on those records and then they took away that disability in 2012 and they said, we don't have those records. So what did they look at? That's the question this judge has. I don't know. There is, that they don't have those records is their responsibility. They have an obligation as a fiduciary to investigate the claim and I got a letter from, it's ER 216. Oh, I'm sorry, that's the wrong one. It's SER 205 and in it, it says the plan agreed, this is a letter to me from Michelle McCarthy from Fox Rothschild and she writes, the plan agreed that it will attempt to obtain the documentation that it has repeatedly requested from you and your client from the physicians directly. I got a cataract so I can hardly see, but they said they're going to get the document. At this point, are you challenging the denial of occupation disability benefits or just the retroactive denial of disability benefits? Just the retroactive denial. I tried to get the other one before the court, they objected, the judge denied my motion, I sought a writ and the court didn't grant it, so that's still pending. In the prior case it was the denial of disability benefits, but right now it's just the retroactive. Well, what happened is it was remanded back and then they decided on the remand back, well you've never been disabled at all, or back to 2005. But it's just the retroactive denial of benefits. That's all we're challenging in this lawsuit. Okay. You also argue, if I can just ask this other question, that the board failed to consider Ms. Hoffman's physical impairments in tandem with her mental impairments, but the board, if I recall, enlisted an orthopedic surgeon to consider Hoffman's disability, which would tend to suggest that they did consider the physical limitations. Is that sufficient, or what other evidence of physical impairments, I guess, was the board required to consider? The issue was whether or not she is disabled, and it could be mental, physical, or a combination of the both. There are doctors, numerous doctors, and I list them in my brief, that found her both physically and others that found her mentally disabled. Now it turns out that she's had two PET scans in 2012 that show she has traumatic brain injury, which could be the cause of all of her symptoms. I mean the physical ones with the three operations in the knee and the herniated disc in the back, that's one thing, but the mental problems could be a result of a traumatic brain injury. So I'm not focusing in on which injury is the most important here, it's just that every doctor that has ever seen her says she's totally disabled. The opinion of their in-house doctor Shackman twice said she's totally disabled mentally. Their neurologist, the last neurologist that they hired, said she's totally disabled and unable to work, and this is expected to live for her lifetime. The neuropsychological testing showed that she's totally disabled. It's hard to figure out what you're supposed to get to prove total disability when you've tapped into just about everything. But Social Security never changed its mind, did it? Never changed its mind. She's totally disabled. Well, counsel, and that's the concern I have, is I'm not here to decide whether she's, this or not, it's here to make sure she was given a fair hearing. Most, my understanding of the record, most of the doctors who said she was disabled, for one reason or another, are the doctors listed in this letter from the plan, where the plan announces, we don't have those records. They're all in the administrative record, and they're all part of the excerpts of record that I filed. But is there anything in the record that, you point to your briefcase, is there anything in the record that we have to demonstrate that they did indeed have this evidence? They're bait stamps. Many of them with their handwriting on it. I mean, this, I don't believe I put in any material outside of the administrative record, other than pleadings and interrogatories and stuff like that. I don't mean to fault you, counsel. But it's all from them. What the plan looked at, because the plan says we didn't look at those records. Well, it says we didn't at one point, and it says we did at another point, so you go figure it out, and it says it's, and they said they have certain documents that they're not going to show anybody, because it's protected by the attorney-client privilege. Well, how could you have it, how can in an ERISA case, can you have an attorney-client privilege when they're supposed to be fiduciaries, and these are guys that are supposed to be advising these people as fiduciaries? If there was a conclusion that the board abused its discretion, what are you saying is the appropriate remedy on remand? The court has two choices. I think the court has the power to say, based on the evidence before us, where every doctor, that examiner said she's totally disabled, where you've got all these objective tests showing objective conditions, possibly causing the disabling conditions, that you can find that she is totally disabled, and she was totally disabled. The alternative is you can remand her back for another full and fair hearing, which will never happen with this board. We don't even know who the board members are. We don't even know if the same board members, the ones that originally denied her and then Well, don't we also have the option of sending it back to the trial court and asking him to take another look at this case in whatever fashion? I think as a matter of law, she's been denied a full and fair hearing, and if you send it back to the trial court, he's going to just have to send it back to the plan for a full and fair hearing. And if you do that under Panabaker, she's going to get her benefits anyway, so it doesn't really make any difference to me whether you find that she's totally disabled or that they Because it goes back to the plan, and she's going to get the benefits, and that's what we're here for. All right. Thank you very much. Thank you, Mr. Fleischman. May it please the Court, Jeff Kravitz on behalf of Appalee, and I think it's important to take a look at the requirements under the circumstances of this particular case, which is that the plan has, according to both its rules and to the law, discretion to make the decisions and that the review by any of the courts should be under a deferential use of discretion, which was exactly what was done by the trial court. Should we consider the fact, though, that the plaintiff here had disability benefits extended to her by the plan in 2004, dating back to 2002, but then in 2012, the plan initiated a review and took those benefits away and sought repayment of the 12 years of benefits she's already, or 10 years of benefits she's already obtained and presumably spent? Should that be considered by this court in evaluating whether the plan abused its discretion? I think it was considered by the trial court, and I can point to the quote from Judge Fees, who said ... Well, let me back it out a little bit. Judge Fees had this case? Judge Fees had the case before he retired. And then it was transferred? Yeah, that's right. And then it was transferred after that. We're here to review. We're here to review, Jeff. And what happened in the interim is that it was discovered that this woman was holding herself as able to work. She on her website said, I am a stunt coordinator. I can work. And the plan takes a look and says, what the heck? And Judge Fees took a look and said, what the heck? She was holding herself out. And when it was discovered and called to the court's attention that she was holding herself out and representing that she could work, at that point, she removed the proof, showing consciousness of guilt. But didn't that ... What bore out of that was that she never made any money from that, at least from what I read, that she was doing ... She was going out lecturing at schools, and that that was just on her page. But did you have any ... The tax records reflect that she made any money doing that? Two questions, so let me address them seriatim if I could. The question under the standards of the plan is whether the person has any substantial gainful activity by reason of any physical or mental impairment, but also whether they are able to work. And that has to do with the unique nature of the entertainment business. At any given time, 95% of the people in the entertainment business may not be working. That doesn't mean they're disabled. What it means ... The record is replete with reports from treating physicians opining that Hoffman is disabled, many which tend to show that she became disabled during the course of her employment, or that employment caused her disability. How do you reconcile those documents with the board's decision from the non-treating doctors that Hoffman was not disabled? I'm just trying to understand what happened here. Surely several ways. Number one, under the Black and Decker case, which we cited to the court, U.S. Supreme Court, the U.S. Supreme Court held that there need not be deference afforded to treating doctors. It's simply additional medical records. Well, did the plan even look at those records? That's what I was asking your colleague here. I can't tell from the record whether the plan even looked at those records. The plan's own letter says we don't have them. There's a little bit of confusion there, which I hope to clear up. A little. A little. Exactly. Each of the doctors that the plan had take a look at her medical situation reviewed every single one of those medical records. The records that were, quote, not available were the question as to whether he had anything additional to supply to the plan. For example, one of the people that she was seeing was a psychiatrist and there were no treating records by a psychiatrist to the plan. That's not what the letter says. I mean, maybe that's what was in the line, but that's not what the letter says. Yeah, I understand. So what happens when the letter says something completely different? The question is whether any of this made any difference. And they didn't because all those records were available to the plan, were reviewed by the plan. I do want to talk about— How do we know that? That's what I— How do we know? What is the—other than you saying that, where is the proof of that? In the administrative record and in the— Where? Well, and in the records by the treating—by the examining doctors who took a look. Where is that evidence, though, that the board did what they were supposed to do in this case with respect to reviewing the doctor? The reference to the examinations by the doctors that they sent her out to in terms of examining the records and coming to medical conclusions. But it's not clear that the board even knew about them based on some of the references in here or that they looked at them. Each of the reports by those doctors are addressed specifically to the plan. I know, but they could have been addressed to me, but, you know, there's no evidence that the board took them into account. The reference is their reference to those various reports. I'd like to talk about the tax records because the tax records, as noted in the letter that specifically by her letter, were not sent back, and the reason is they were really voluminous, and he already had them. That doesn't mean that they weren't examined. It simply means that they weren't sent back and they were referenced by us. But I go back to the standard that is to be applied, which is not whether she actually was working, but whether she was able to work. And according to the language of the plan, it isn't as though she had to be able to work in her chosen profession. There are cases, which were cited by the appellant on this matter, where it was a question of working in your chosen profession. But if she could be somebody answering phones, if she could be a barista, she does not get an occupational disability pension under the terms of the plan. That's simply not what's done. So it's a question of being able to work, and it's also a question of it being able to last the individual's lifetime. And as referenced by the board, there's no indication of that. She could work in any generalized capacity, and that, I think, is important as well because Mr. Kravitz, there's just so much confusion here in the record. And I was hoping you'd be able to clarify and give us some clear answers. There is some conflicting evidence in the record regarding whether the board considered the administrative record from Hoffman's first claim when it denied her second claim. So was the prior administrative record reviewed by the board? It was. The only thing that was not reviewed by the board, because he mentions the prior case, they were not given any of the pleadings in the prior case or the opinion of the Ninth Circuit. So if that's the case, were the medical reports from Ms. Hoffman's treating physicians included in that earlier administrative record? Yes. And seen by the committee. And by the way, the committee... The board's denial letter doesn't make any reference of Hoffman's prior medical history. Doesn't that seem odd to you? No, because under the circumstances, the board is entitled to take a look at everything and come to conclusions based on what they think is the appropriate result. And it is black-letter law that unless it's arbitrary and capricious, and here it wasn't because the various doctors who saw her, and there were six, each opined that she could do something. Again, maybe she can't be a stunt woman anymore, but she certainly could do something in society. But based on that same evidence 10 years earlier, that same evidence led the plans to decide she was disabled. So what changed? What changed? What changed was a couple of things. Number one, that was back in 2002. So the year changed. I'm sorry. It was back in 2002, and her situation changed. As noted by one of our reviewing doctors, depression is something that usually over time manifests itself, but you're able to work it out in terms of going back to work. So what changed was that, and what also changed, frankly, was the startling result, as per Judge Fees, she's saying she can work. She's telling the world she can work, but she's telling this board that she can't work. You can't have it both ways, and I find it remarkable, based on my years of experience, that when confronted with that, she takes it down. So your position is that these statements from a person who's suffering mentally in severe depression, these statements on her website basically trump all of what these treating physicians say. Because of timing. In other words, these were not written in 2002. If the court takes a look at those statements, they are not illiterate statements. They are fully developed statements. They reference prior jobs. They reference current jobs. They have a reference by somebody who said, gee, I just employed her. Before making this decision, did the board ask her to come in, or whoever made the decision for the plan, did they ask her to come in and say, we have some concerns that your disability situation has changed because you're holding yourself out to work, so please respond to that. Did that happen? That's something that's customarily not done, but what I will say is there was a declaration submitted by her, and that is at ER 259, which he claimed wasn't submitted to the board, but it was because it's got the numbering at the bottom, 844, which is part of the administrative record. And what she doesn't do notably is say, I can't work at anything. What she does is she talks about the experience, how limited it was, how it was volunteer, as opposed to getting paid. That's not the standard. The standard is, can she work at anything? And she can work at things. And that was the finding of the trial judge. And the trial judge, I can't help but noting, the trial judge said, gee, the briefing that's being given to us by the plaintiff on this thing, her decision to respond to the motion for summary judgment by simply reincorporating earlier briefing and then leveling attacks on defense counsel. There was nothing, were we playing games at the trial level? There was nothing at the trial level defending the position that they're defending now. I find that remarkable, but we shouldn't be wasting the time with trial judges, and then you bring it up here for the first time. The trial judge was most perturbed by that, as well he should have been. The trial judge did what he did, which was to uphold the decision of the board, which is a deferential abusive discretion, and the question is whether she would be able, and in the language of the Klan, in the sole and absolute judgment of the board, to engage in substantial, gainful activity. Are these statements from the internet that you said she posted, are they in the record? They are in the record, Your Honor. Where is that now? I'll- I didn't get to see it. I didn't see it. That's fine. Can I supply that to the court rather than spending the time at this point? But they're absolutely in the record. So that leads me back to a question I asked your colleague, representing the plaintiff here, the appellant. When you say the trial judge made findings, you're talking about the trial judge that's being reviewed here, right? I'm talking, yes, I'm talking about the trial judge. In addition- He granted a motion for summary judgment, so how did he make findings of fact? He asked for findings from us, okay. But wouldn't that be an issue of material fact? No. The plaintiff is taking the position based on what they read on the internet that she's holding herself out to work, but the plaintiff is apparently saying, no, I really wasn't working. I don't know what she's saying, but she's disputing that. Respectfully not, and I'll explain why. I don't know whether anybody here is a baseball fan, but the rule in baseball is tie goes to runner. The rule in ERISA law is that the decision by the plan is reviewed only for abuse of the deferential standard, and the reason for that is because otherwise every one of these cases would be up before the Ninth Circuit. You're taking the position that in ERISA plans, the traditional motion of summary judgment standard is not followed under case authority of this circuit, and that is Nolan versus Heal College. Absolutely, Your Honor. Thank you. Thank you very much, Your Honors. Following up on that, why file a motion for summary judgment when the next day you've got the trial and the briefs are already filed for the trial in the administrative record? Why file a motion for summary judgment if they're all one and the same, you know? Anyway. Because they're all one and the same, you can avoid a trial. But we had already filed all the briefs and everything else. The judge had time to review everything. That's why I asked my question, is what difference would it have made if the court had waited one more day to have this trial on the record, which seems very similar to a review of the record for a motion for summary judgment? Well, he would have done the same thing. I mean, he was supposed to have done the same thing. Okay. We're told that one of their doctors told the board that depression goes away and people – she's got medical records that I point out that come after the – they're talking after this doctor – after the records that this doctor reviewed that said depression goes away. And one of the records that they have is from their own doctor, their own neurologist. The constant-eye neurologist who didn't sign this report, who says that her brain spec tests could be either indicative of traumatic brain injury, dementia, or treatment-resistant depression. Now, if she's got treatment-resistant depression, according to one of their doctors, how can another one of their doctors say that depression's going to go away? Okay? These are all contradictory. They don't even make any sense. Now, if you look at – whoops. Mr. Fleshman, would you try to conclude because you're already over your time? Okay. Just take a look at ER 249, interrogatory 14. What plan – what plan trust – I'm sorry. It's not 14. It's run ER 249. I can't see it without my other glasses. But in any case, I asked them, did they look at the record from the first case? They said no, if you wanted it. But they answered in an interrogatory, under oath, verified by a name who's been crossed out. They did not look at all. According to them, they didn't. They're changing their story now, but that's to be expected, I guess. As far as her webpage, there were three movies that were involved. One was made before she was disabled in 1999. It wasn't distributed until after she became disabled. The second was a LinkedIn article that was put there by a guy named Dahl from Sweden who said she's working on a fan film with him. Well, she wasn't working on a fan film with him. He didn't put – she didn't put it on her LinkedIn page. He did. And he later – and it's in the record – wrote a letter. I'm sorry I wrote that. She wasn't working for me. She can come and visit us and talk to the people about her stunt work. And the third one – well, I don't remember what the third one was, but in any case, there's this lady who gave her life to being a stuntwoman. If you saw Naked Gun and where Queen Elizabeth goes sliding across the table, that's her. That's Mrs. Hoffman. Thank you, Mr. Fleischman. Okay. The case of Hoffman v. Queen Actress Guild is submitted.
judges: Bea, Murguia, Bastian